Filed 6/29/16  In re N.M. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re N.M. et al., Persons Coming Under the Juvenile Court Law. | B267675 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK12187) |
| Plaintiff and Respondent, | |
| v. | |
| G.H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court for the County of Los Angeles. Philip Soto, Judge.  Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

_____

**SUMMARY**

G.H., the father in this dependency case, appeals from the court's dispositional order. He challenges the court's finding of jurisdiction under Welfare and Institutions Code section 300, subdivision (a), but does not contest the court's other jurisdictional finding, based on the same conduct, under section 300, subdivision (b).[1] Father also challenges the court's dispositional order, insofar as it required him to take "10 random drug tests," contending he had no "notice of, and opportunity to counter" the order, and there was no substantial evidence he had an illicit drug problem.

We decline to review father's jurisdictional claim, because a single jurisdictional finding supported by substantial evidence renders a challenge to other findings moot. We also conclude the dependency court did not abuse its discretion when it ordered father to take random drug and alcohol tests.

**FACTS**

Father and mother B.G. lived together with their son, N.M., who was born in 2012, and mother's two older girls. The family came to the attention of the Los Angeles County Department of Children and Family Services (Department) on May 5, 2015, when father was arrested in the wake of a domestic violence incident.

According to the police report, father had been drinking with a friend, and mother and father had a heated argument. Father "threw objects inside the master bathroom and broke the medicine cabinet mirror," and punched mother on the left side of her face, causing bruising. The two girls heard the arguing, but said they did not witness the incident. N.M. was too young to make a statement. The police report stated that both girls "appeared scared and did not want to talk."

Father said this about the incident: "I can't remember. I was drunk. She's [mother] always arguing with me like that. She was bugging the Hell out of me man. I was taking a shower, I was telling her, 'Get outta here!' She changed the Wi-Fi passcode

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

and I got even more mad.  I hit her on her head I think, I don't remember.  Usually when we fight, I leave before hitting her."  Father pled nolo contendere to a misdemeanor violation of Penal Code section 273.5 and was placed on summary probation; the court ordered him to complete a 52-week domestic violence program, pay various fines and perform community service.

The Department did not detain the children.  Its "Non Detention Report" of July 13, 2015, stated the family could be categorized as high risk for future neglect and abuse, justifying continued attention from the Department, but both parents were cooperative.  The petition was filed "for child safety purposes to ensure that parents follow through with completing counseling, domestic violence program and demonstrate[] that they provide minors with a healthy environment."

The Department's petition alleged a substantial risk that N.M. would suffer serious physical harm "inflicted nonaccidentally upon the child by the child's parent" (§ 300, subd. (a)), and a substantial risk that N.M. would suffer serious physical harm or illness "as a result of the failure or inability of his . . . parent . . . to adequately supervise or protect the child" (§ 300, subd. (b)).  Both allegations were based on the same conduct: that mother and father "have a history of engaging in violent physical altercations in the presence of the children.  On 5/5/15 . . . father struck the mother's face with . . . father's fists, inflicting a mark to the mother's face, in the presence of the children.  On 5/5/15 . . . father was arrested for Domestic Violence.  Such violent conduct of the . . . father, against the mother, in the presence of the children endangers the children's physical health and safety, placing the children at risk of serious physical harm, damage and danger."

During the Department's investigation, father agreed to do an "on demand" test for the Department,  and eventually did so on July 6, 2015; the test was negative for drugs and alcohol.  An addendum to the Department's nondetention report, also filed July 13, 2015, recommended (along with counseling, parenting classes and a domestic violence program) that father "[p]articipate in substance abuse rehabilitation program and submit to random testing."  The minute order for July 13, 2015, indicates that father

appeared at the detention hearing that day and that an attorney represented father. The court made no detention findings and ordered the children released to parents pending the next hearing. The minute order states that father "is to drug/alcohol test weekly on demand; results are to be attached to the next report."

The hearing on jurisdiction and disposition occurred on August 31, 2015. The Department's report, filed August 27, 2015, described an interview with father on August 18, 2015. Father was asked about his participation in domestic violence classes and answered: "Those classes don't work. This is the second time I take them. I get frustrated in that class, I feel like popping on someone, like snapping on someone." He said he had been ordered to participate in domestic violence classes "years ago" because domestic violence occurred in a relationship "with his other 'baby mama.' " Father said "he receives SSI for 'getting frustrated,' " and "I have always been like this. I get frustrated." When he was younger, he stabbed a teacher in the breast area with a pencil.

Father said he had not been drinking alcohol since the incident, but that alcohol would relax him, and he did not think he had a problem with alcohol. The Department's report stated: "During this investigation, it became clear that father has an anger management problem, which often is exacerbated by his alcohol use." The Department recommended family maintenance services and that father, among other things, "submit to random drug and alcohol testing."

At the hearing, the court indicated it was "inclined to make true findings" on the Department's petition. Father's counsel requested complete dismissal of both jurisdictional allegations, because this "was a one-time incident" and "there's no current risk of harm." Counsel stated that "there's certainly not enough to sustain the (a)(1) [allegation]," since the children were not in the room and were not harmed. Counsel asked for dismissal or "at the very least I'm asking that the (a)(1) be struck."

The court made true findings under both subdivisions (a) and (b) of section 300. The court observed it had "already let [father] return to home over the objection of the county," but "disagree[d] with father's counsel that the risk has been alleviated given the

4

criminal history of the father. I believe we could put services in place to keep everybody safe, but we need to take jurisdiction. We need to have oversight."

The court ordered father "to do a domestic violence program as ordered by the criminal court." Father's counsel then stated she was "objecting to either drug testing [*sic*] as there's no allegation regarding any problems on that count. . . . So I am objecting to anything other than the 52-week domestic program which was already ordered by the criminal court."

The court noted the objection and stated: "I can't [blind] myself to the evidence that's been presented that indicates that the father, despite what he says about being more relaxed after using alcohol, seems to be more aggressive after using alcohol. [¶] I will order 10 random drug tests. [¶] We need to have you off of alcohol. . . . [¶] . . . [¶] . . . We need him off alcohol. We need to have him doing his [domestic violence] classes. We need to have him abiding by the criminal court's orders of doing parenting classes and complying with the terms and conditions of probation."

Father filed a timely appeal from the dependency court's order.

## DISCUSSION

We reject both of father's claims on appeal.

### 1. The Jurisdictional Claim

Father does not challenge the dependency court's finding that it has jurisdiction over N.M. under section 300, subdivision (b). He only contends the court's jurisdictional finding under subdivision (a) was improper, because the evidence of domestic violence against mother did not show a substantial risk that father would "nonaccidentally inflict serious physical harm" on N.M. The court's finding under subdivision (a), father says, "carries more stigma than passively enabling such injury through neglect or a failure to protect" under subdivision (b). We will not consider father's contention.

The relevant principle is stated in *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451: "When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for

jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence." (See also *In re M.W.* (2015) 238 Cal.App.4th 1444, 1452 ["As a general rule, a single jurisdictional finding supported by substantial evidence is sufficient to support jurisdiction and render moot a challenge to the other findings."].)

Of course, appellate courts "retain discretion to consider the merits of a parent's appeal [citation], and often do so when the finding '(1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for [the appellant], beyond jurisdiction" [citation].' " (*In re M.W.*, *supra,* 238 Cal.App.4th at p. 1452; see *id.* at pp. 1446, 1452 [exercising discretion to review "pernicious" findings that mother (who conceded jurisdiction was proper due to her substance abuse) failed to protect her children from a substantial risk of physical and sexual abuse, the latter a finding that "carries a particular stigma"].)

In this case, father does not contest the underlying factual findings on the conduct supporting jurisdiction – he merely claims those uncontested findings do not support jurisdiction under section 300, subdivision (a). But father fails to identify any of the three circumstances listed in *In re M.W.* that might support the exercise of our discretion to consider the merits of his claim. This is for good reason; it is clear that none of them applies to his case. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1493 ["Father has not suggested a single specific legal or practical consequence from [the challenged] finding, either within or outside the dependency proceedings."].)

Father contends this case is like *In re Giovanni F.* (2010) 184 Cal.App.4th 594, where the father acknowledged that the evidence might have supported jurisdiction under section 300, subdivision (b), but contended there was no evidence supporting jurisdiction under subdivision (a). (*Giovanni F.,* at p. 598.) Father misconstrues the posture of *Giovanni F.* In that case, the petition was filed under subdivision (a) – not, so far as the

6

opinion shows, under subdivision (b). The Court of Appeal found that subdivision (a) clearly applied to the father's conduct in that case. *Giovanni F.* is not a case where the court found jurisdiction to exist under both provisions, and consequently did not address any of the relevant authorities.

In sum, "we cannot render any relief to Father that would have a practical, tangible impact on his position in the dependency proceeding" (*In re I.A., supra,* 201 Cal.App.4th at p. 1492), and therefore decline to review his jurisdictional claim.

## 2. The Drug Testing Issue

Father contends we must reverse the trial court's dispositional order requiring drug testing. At the hearing, the court ordered "10 random drug tests," observing that "[w]e need to get you off alcohol." The court-ordered case plan requires "10 [r]andom or on demand consecutive drug and alcohol tests, if any test is missed or dirty, then full drug rehab program w/random testing." (The words "and alcohol" are handwritten on the case plan form.) Father contends first that he "lacked notice regarding this issue," and second that there was no substantial evidence showing he had an illicit drug problem.

Father cites no relevant authority for the claim he "lacked notice regarding this issue." As our recitation of the facts shows, the issue of alcohol and substance abuse testing arose throughout this case. Father admitted he "was drunk" during the domestic violence incident. Father agreed to and took an "on demand" test for drugs and alcohol on July 6, 2015, before the July 13, 2015 detention hearing. At that hearing, the Department's addendum report recommended that father "[p]articipate in substance abuse rehabilitation program and submit to random testing." The Department's report for the jurisdiction/disposition hearing, filed four days before the hearing, stated he has an anger management problem "often . . . exacerbated by his alcohol use," and recommended father "submit to random drug and alcohol testing." There is no basis for his claimed lack of notice.

Father's second contention is that, assuming the evidence supported an alcohol program, it did not show he had an illicit drug problem, and "absent any evidence of an actual drug problem, the court could not impose a drug testing order." For this

7

proposition he cites *In re Basilio T.* (1992) 4 Cal.App.4th 155 (*Basilio T.*). That case involved removal of the children from the parents' custody, and the court found the evidence did not warrant removal. The court also, as father points out, agreed with the parents' contention there was no evidence either of them had a substance abuse problem, and "nothing in this record . . . indicate[s] that a substance abuse problem led to the conditions that caused the dependency," so it was error to include a substance abuse component in the reunification plan. (*Id.* at pp. 172-173.)

This case is not like *Basilio T.* Here, there *was* evidence that a substance abuse problem – alcohol – "led to the conditions that caused the dependency." (*Basilio T., supra,* 4 Cal.App.4th at p. 173.)

The principles that apply are these. "The court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion. [Citations.] We cannot reverse the court's determination in this regard absent a clear abuse of discretion. [Citation.]" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006; see also *In re Briana V.* (2015) 236 Cal.App.4th 297, 311 ["the juvenile court is not limited to the content of the sustained petition when it considers what dispositional orders would be in the best interests of the children"].)

We see no abuse of discretion here. There is no question that alcohol testing was appropriate. The record of father's previous test in July 2015 shows a single test for both drugs and alcohol. The court's order does not require father to do anything he would not otherwise be required to do. It was not illogical for the court to take measures to ensure that father would not turn to some other form of substance abuse in the absence of alcohol. (The record showed father was convicted in 2009 of possession of nitrous oxide in violation of Penal Code section 381, subdivision (b), which makes it a misdemeanor to possess certain substances "with the intent to breathe, inhale, or ingest for the purpose of causing a condition of intoxication . . . .") There was no error.

8

**DISPOSITION**

The judgment of the dependency court is affirmed.

GRIMES, J.

WE CONCUR:

RUBIN, Acting P. J.

FLIER, J.